IN THE MATTER OF THE ESTATE OF
NIKITA BLACK, A MINOR.

Essex County Court
Probate Division

December 9, 1976.

Mr. *Jacob M. Goldberg* for Barbara Black, guardian of Nikita Black, a Minor.

Mr. *William J. Tamburri* for the Essex County Welfare Board (*Mr. David A. Valvano* appearing).

THOMAS, J. S. C., Temporarily Assigned. Essex County Welfare Board seeks reimbursement of support paid to a dependent minor from the proceeds of a personal injury settlement perfected on the minor's behalf. A brief review of the facts giving rise to this suit is helpful, if not necessary, to a determination of the issues.

On July 18, 1975 Barbara Black, as guardian of her infant daughter, Nikita, received in trust $4,800, the net proceeds of a settlement of her daughter's claim for injuries arising out of a July 1973 accident. Barbara and Nikita Black have been receiving welfare since June 1, 1971. On April 15, 1976, about eight months after deposit of the infant's trust fund, Barbara Black executed in blank an "agreement to repay" the welfare board from unstated anticipated funds.

The welfare board has adopted the procedure of reviewing a welfare client's status in person every six months. Although the client is instructed that he or she must, without further notice, advise the welfare board of any changed financial position, in practice the board is infrequently notified of such change unless it will result in an increase in payment to the client. At the review he or she is asked about all bank accounts and if there are claims pending on behalf of

any eligible person. That procedure was followed in this case; nevertheless, Ms. Black failed to reveal that her infant daughter had been involved in an accident and that she had a claim pending. After settlement of this claim and creation of a trust account in the Howard Savings Bank, the welfare board received a tip about the settlement. In advance of the next periodic six-month review, Ms. Black was called back to the office and asked if her daughter had had an accident and whether a bank account existed in her name. She conceded her daughter's accident but denied making a claim or the existence of a bank account. However, in open court she admitted having lied because she was afraid the welfare board would take the money away. Despite her denial, the welfare board obtained an agreement to repay in blank. Later, existence of the $4,800 trust fund was confirmed and this order to show cause seeking repayment resulted.

Based upon the "agreement to repay", the welfare board seeks reimbursement of all support paid on behalf of the infant from June 1, 1971 to the present. Ms. Black maintains that the "agreement to repay," to be enforceable, must have been executed in advance of receipt of funds on behalf of her infant daughter. Therefore, since the repayment agreement in this case was not executed until well after the child's funds were received, the welfare board is not entitled to any repayment. I disagree.

*N. J. S. A.* 44:10–4(a), the repayment provision of the Assistance for Dependent Children Act, in pertinent part provides:

Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare board may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted * * *

Defendant's reliance upon *Essex Cty. Welfare Bd. v. Hellams,* 98 *N. J. Super.* 181 (Cty. Ct. 1967), aff'd 103 *N. J. Super.* 438 (App. Div. 1968) is misplaced since in that case no reimbursement agreement was obtained.

In the later case of *Francis v. Harris,* 100 *N. J. Super.* 313 (Law Div.), aff'd o. b. 103 *N. J. Super.* 440 (App. Div. 1968), certif. den. 53 *N. J.* 227 (1969), reimbursement was allowed. After distinguishing *Hellams, supra,* on the ground that there, an "agreement to repay" had not been obtained, *Francis* upheld the validity of obtaining repayment from funds created by settlement of a personal injury claim on behalf of an infant, providing, of course, a reimbursement agreement had been signed. The Appellate Division affirmed on the trial judge's opinion, and the Supreme Court denied certification. Thus, the holding in the *Francis* case is the existing expression of our appellate courts with regard to the availability of infants' funds for reimbursement, and this court is bound thereby. *Reinauer Realty Corp. v. Paramus,* 34 *N. J.* 406, 415 (1961). But cf. *Cumberland Cty. Welfare Bd. v. Rodriguez,* 144 *N. J. Super.* 365 (Law Div. 1976).

In the present case we are faced with a factual situation which falls between *Hellams* (no agreement at all) and *Francis* (an agreement received in advance of any welfare payment and infant judgment). Here the agreement was signed after the commencement of the payment of welfare and after receipt of a fund in the infant's favor. From what date does this "agreement to repay" have the effect of requiring reimbursement, if at all?

*N. J. S. A.* 44:10–4 speaks in terms of reimbursement of support paid after execution of an "agreement to repay." It says nothing about repaying assistance received prior to execution, nor does the statute say such an agreement must be signed in advance of receipt of any fund as a condition precedent to reimbursement. Since a welfare board is not required to seek reimbursement, it is clear the Legislature intended repayment only if, and from when,

an agreement to repay is signed and a resource is obtained. In accord is *Cumberland Cty. Welfare Bd. v. Rodriguez, supra,* limiting reimbursement to welfare received from the date the resource is obtained.

██ The factual circumstances of this case highlight the impracticability of obtaining an agreement to repay while a claim is pending. The intent of the Legislature to permit counties to obtain reimbursement of welfare from resources subsequently received by clients should not be thwarted by the mere technicality of form. It is entirely proper and indeed a recommended procedure to obtain, when application for welfare is first made, an "agreement to repay." This need be nothing more than a simple statement to repay from any resource received in the future by a welfare recipient. If that future resource belongs to an infant, application should be made to the court for reimbursement approval. Factors to be considered for evaluating such application, outlined in *Cumberland Cty. Welfare Bd. v. Rodriguez, supra,* are recommended for consideration, particularly the child's need for future medical treatment or services. No reasons for restricting payment in this case were advanced.

Accordingly, an order should be submitted on behalf of the Essex County Welfare Board providing for repayment of assistance received by the infant, Nikita Black, from April 15, 1976 to date.